# IN THE COURT OF APPEALS OF IOWA

No. 21-0151
Filed June 16, 2021

**IN THE INTEREST OF S.K. and N.K.,**
**Minor Children,**

**S.K., Father,**
    Appellant.
_____

Appeal from the Iowa District Court for Monona County, Mark C. Cord III, District Associate Judge.

A father appeals the adjudication of his children as children in need of assistance. **AFFIRMED.**

Molly Vakulskas Joly of Vakulskas Law Firm, PC, Sioux City, for appellant father.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Michelle M. Hynes of Juvenile Law Center, Sioux City, attorney and guardian ad litem for minor children.

Considered by Vaitheswaran, P.J., Ahlers, J., and Gamble, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**GAMBLE, Senior Judge.**

A father appeals from the adjudication of his two children, S.K. and N.K., as children in need of assistance (CINA).

**I. Background Facts**

The Iowa Department of Human Services (DHS) became involved with this family after S.K. stated the father sexually abused her while N.K. slept nearby. The juvenile court ordered S.K.'s temporary removal from the familial home. Following removal, S.K. went to her paternal great-grandmother's home. Then, the father went to the great-grandmother's home and retrieved S.K.'s cell phone and her password. The juvenile court granted the State's request for temporary removal of N.K. two months later.

When preparing for the adjudicatory hearing, the father filed his witness and exhibit list. The witness list included "[a]ny technician at Computer Forensic Resources." The father had sent S.K.'s phone to Computer Forensic Resources for evaluation. After the father refused the State's prior request for production of the phone and any report generated by the expert, the State filed a motion to compel. The juvenile court granted the State's motion and ordered the father to produce the phone and any report generated. The father did not comply, so the State filed a second motion to compel. The court ordered the father to produce the phone and report.[1] The father filed an amended witness list, which again listed "[a]ny technician at Computer Forensic Resources."

---

[1] The court ordered the father to produce by January 16, 2020 at 12:00 p.m. Should he not produce, the court directed the father to appear before the court at 1:45 p.m. the same day. Because we find no reference to the father appearing before the court that day, and we do find subsequent references to the father

Following a two-day adjudicatory hearing, the court adjudicated S.K. CINA, pursuant to Iowa Code section 232.2(6)(b), (c)(1), (c)(2), (d), and (*l*) (2019), and adjudicated N.K. CINA, pursuant to section 232.2(6)(c)(1), (2). The court then held a dispositional hearing. The dispositional order provided for visitation between the children and the father in a supervised or therapeutic setting at the discretion of DHS, the children's guardian ad litem (GAL) and attorney, and therapists. The father appeals following the dispositional order.[2]

## II. Standard of Review

CINA proceedings are reviewed de novo. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014). "[W]e are not bound by the juvenile court's fact findings; however, we do give them weight. Our primary concern is the children's best interests." *Id.* (citation omitted). "In determining the best interests of the child[ren], 'we look to the parent['s] past performance because it may indicate the quality of care the parent is capable of providing in the future.'" *In re L.H.*, 904 N.W.2d 145, 149 (Iowa 2017) (second alteration in original) (quoting *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006)).

With respect to evidentiary issues arising within CINA proceedings, we review for an abuse of discretion. *In re L.R.*, No. 13-0713, 2013 WL 4504930, at *6 (Iowa Ct. App. Aug. 21, 2013).

---

producing the phone and report in a later motion in limine, we assume the father produced.

[2] The father appeals following entry of the dispositional order, which is when the adjudication became final for appeal purposes. *See In re Long*, 313 N.W.2d 473, 475 (Iowa 1981).

## III. Discussion

### A. Visitation

The father first challenges the visitation provision of the dispositional order concerning N.K.[3]  The dispositional order stated, "[C]ontact between [N.K.], [S.K.] and their father . . . shall be left to the discretion of [DHS], the children's [GAL]/attorney and their respective therapist to be only in a supervised or therapeutic setting."  The order went on to clarify,

> [DHS] shall make all reasonable efforts to facilitate visitation between the parents and [N.K.], relying, in part, on the analysis and conclusions of [N.K.]'s therapist(s).  "To establish reasonable efforts, DHS must either present a definitive plan with the ultimate goal of visitation or make a showing that visitation is not in the children's best interests."

(Citation omitted.)  The father contends the juvenile court "improperly delegated its power to make visitation decisions to the discretion of DHS, in consultation with the GAL and the child's therapist."  *Cf. In re Marriage of Stephens*, 810 N.W.2d 523, 530 (Iowa Ct. App. Feb. 15, 2012) (recognizing only a district court may modify a custody or visitation order).  We disagree.  The father is correct that "[a] court may not delegate this power to a third party."  *In re A.F.*, No. 17-0919, 2017 WL 3525327, at *2 (Iowa Ct. App. Aug. 16, 2017).  However, the juvenile court did not delegate its power.  *See id.*  Instead, it "made the custody and care determination and afforded the agency discretion to implement the court's decision in the best interest of the child.  This was a permissible exercise of the juvenile

---

[3] The father also challenges the visitation provision contained in prior interlocutory orders.  However, with respect to the prior orders, the issues are moot so we do not address them.  *Cf. In re A.M.H.*, 516 N.W.2d 867, 871 (Iowa 1994); *In re C.G.*, No. 10-0062, 2010 WL 2757206, at *7 (Iowa Ct. App. July 14, 2010).

court's authority." *Id.* (collecting cases). Moreover, because the juvenile court afforded DHS discretion to regulate visitation, it will be able to increase visitation, should conditions improve, more quickly than it could absent the discretion granted to it by the juvenile court. *Cf. In re S.M.*, No. 09-0293, 2009 WL 1212768, at *1–2 (Iowa Ct. App. May 6, 2009). The juvenile court retained oversight by requiring DHS to either present a plan with a goal of visitation or show visitation is not in the best interest of N.K. in order to establish reasonable efforts. And should the father feel DHS is arbitrarily withholding visitation in the future, he is not without recourse. He should alert the juvenile court and argue DHS is failing to provide reasonable efforts toward reunification. *See In re L.M.*, 904 N.W.2d 835, 839–40 (Iowa 2017); *In re K.L.P.*, No. 15-1371, 2015 WL 6507840, at *4–5 (Iowa Ct. App. Oct. 28, 2015).

To the extent the father argues the "juvenile court err[ed] when it found that it was in the best interests of N.K. that no supervised visitation with [the f]ather be ordered, and that the decision regarding visitation should remain at the discretion of DHS, in consultation with the GAL and the child's therapist," we find his argument to be without merit. The dispositional order specifically ordered supervised or therapeutic visitation between N.K. and the father.[4] And we agree that determining and executing the frequency and finer points of visitation was best left for DHS in consultation with the GAL and therapist because those parties have the most up-to-date and pertinent information as to how visitation could be

---

[4] To the extent the father challenges visitation determination in prior interlocutory orders, the issues are moot, and we do not address them. *Cf. A.M.H.*, 516 N.W.2d at 871; *C.G.*, 2010 WL 2757206, at *7.

successfully completed for this family. *Cf. In re S.J.*, 620 N.W.2d 522, 525 (Iowa 2000) (holding services should be tailored to each case's unique circumstances).

So we do not disturb the dispositional order's visitation provision.

## B. Discovery Issue

For his next claim, the father claims the juvenile court abused its discretion by ordering the father to produce S.K.'s phone and the forensic expert's report relating to the phone.[5] The father asserts the juvenile court violated his right to privacy in the phone when it compelled him to produce it. He also asserts the data stored on the phone and the forensic report amounts to privileged work product.

First, we note the father's claim the court violated his right to privacy by compelling production of the phone is without merit. While the father purchased the phone and paid for the service, he provided it to S.K. for her exclusive use. The phone contained S.K.'s communications, not the father's, so the father had no expectation of privacy in the phone.[6] *Cf. State v. Tyler*, 867 N.W.2d 136, 167 (Iowa 2015) (noting for a person to have a legitimate expectation of privacy, the person must establish a subjective expectation of privacy that is objectively reasonable).

Further, the phone is a tangible thing, and the data stored on the phone is electronically stored information. Both the phone and the data are subject to discovery pursuant to Iowa Rule of Civil Procedure 1.512. *See* Iowa Ct. R. 8.3

---

[5] The father previously sought interlocutory review of the juvenile court's order, which was denied by a single justice order and confirmed in a three-justice review order.

[6] The father refers to the phone as his phone in his petition on appeal. However, at the adjudicatory hearing, the father referred to the phone as "[S.K.]'s phone." The father's phone was seized by law enforcement following his arrest for sexual abuse.

("Although informal discovery methods are preferred, Iowa R. Civ. P. divisions V and VII, governing discovery, depositions and perpetuation of testimony, shall apply to proceedings under Iowa Code chapter 232, divisions III and IV, where not otherwise inconsistent with these rules or applicable statutes."); *cf.* 11 Barry A Lindahl, Iowa Practice Series: Civil & Appellate Procedure § 24:26 (May 2021 update) (explaining electronically stored information is discoverable so long as it is relevant to the pending action and not otherwise privileged). The data stored on the phone was not prepared in anticipation of litigation by the father, his lawyer, or his experts. The electronically stored information on the phone is not protected from discovery as work product under Iowa Rule of Civil Procedure 1.503(3). *See* Iowa Ct. R. 8.3 (applying division V of the Iowa Rules of Civil Procedure to juvenile cases*); cf. Iowa Ins. Inst. v. Core Grp. Of Iowa Ass'n for Justice*, 867 N.W.2d 58, 70 (Iowa 2015) ("To constitute work product, something must be (1) a document or tangible thing, (2) prepared in anticipation of litigation, and (3) prepared by or for another party or by or for that party's representative.").

The forensic report was prepared by the father's expert in anticipation of litigation. However, the father made overtures throughout these proceedings suggesting he intended to call the expert who created the report to testify or offer the report itself as an exhibit. For example, two of his witness lists identified a "technician at Computer Forensic Resources" as a witness, and his motion in limine requested he "be allowed to offer any contents of the phone or report as evidence at the hearing." Yet, at other times, the father suggested he would not call a witness from Computer Forensic Resources. So we agree with the juvenile court that the father was attempting to "present and hide the ball" in effort to avoid

or delay disclosure. And despite the father's contention that the report amounted to privileged work product, we view the report as that of an expert expected to be called as a witness making it discoverable. *See* Iowa R. Civ. P. 1.508(1)(b) (permitting discovery of reports made by an expert expected to testify); *cf. Iowa Ins. Isnt.*, 867 N.W.2d at 71 (recognizing surveillance video "loses the status of protected work product once a determination is made that the surveillance will be used at trial"). So we conclude the court did not abuse its discretion in ordering the father to produce the phone and the report.

Moreover, the father is not entitled to any relief because he could not establish any resulting prejudice from the disclosures. *See In re A.S.*, 743 N.W.2d 865, 869 (Iowa Ct. App. 2007) (noting "even the erroneous admission of . . . evidence will not result in reversal unless it is prejudicial"). The State did not use any of the data from S.K.'s cell phone at the trial. No party introduced the expert's report. Only the father introduced evidence from S.K.'s phone. So he was not prejudiced by the disclosures and is entitled to no relief.

### C. Statutory Grounds for Adjudication

Finally, the father challenges the statutory grounds authorizing adjudication of S.K. and N.K. However, he makes only perfunctory and generalized statements to challenge the grounds supporting adjudication.[7] The State argues the father waived his challenges to the statutory grounds by failing to adequately develop his

---

[7] With respect to S.K., the father argues, "The [c]ourt failed to take into account S.K. adding additional facts to her allegations, as well as lying in the forensic interview regarding sending nude pictures, and numerous instances of S.K. lying under oath." With respect to N.K., the father argues, "The State failed to prove either subsection with regards to adjudication of N.K."

arguments on appeal. We agree and conclude the father waived his claims as to N.K. *See In re Z.I.*, No. 20-1473, 2021 WL 811130, at *1 n.1 (Iowa Ct. App. Mar. 3, 2021); *In re A.D.*, No. 20-1192, 2020 WL 7022393, at *3 n.5 (Iowa Ct. App. Nov. 30, 2020); *In re W.N.*, No. 20-1099, 2020 WL 7021682, at *2 n.4 (Iowa Ct. App. Nov. 30, 2020); *In re C.N.*, No. 19-1861, 2020 WL 567283, at *1 (Iowa Ct. App. Feb. 5, 2020); *In re O.B.*, No. 18-1971, 2019 WL 1294456, at *2 (Iowa Ct. App. Mar. 20, 2019).

With respect to S.K., we find the father sufficiently developed an argument challenging S.K.'s adjudication. He argues, "The [c]ourt failed to take into account S.K. adding additional facts to her allegations, as well as lying in the forensic interview regarding sending nude pictures, and numerous instances of S.K. lying under oath." Essentially, he claims S.K.'s words cannot be trusted to serve the basis for her adjudication as CINA.

The juvenile court adjudicated S.K. CINA on five grounds: (1) under section 232.2(6)(b) as a child "[w]hose parent . . . has physically abused or neglected the child, or is imminently likely to abuse or neglect the child"; (2) under section 232.2(6)(c)(1) as a child "[w]ho has suffered or is imminently likely to suffer the harmful effects as a result of . . . [m]ental injury caused by the acts of the child's parent"; (3) under section 232.2(6)(c)(2) as a child "[w]ho has suffered or is imminently likely to suffer the harmful effects as a result of . . . [t]he failure of the child's parent . . . to exercise a reasonable degree of care in supervising the child"; (4) under section 232.2(6)(d) as a child "[w]ho has been, or is imminently likely to be, sexually abused by the child's parent"; and (5) under section 232.2(6)(*l*) as a

child "[w]ho for good cause desires to have the child's parents relieved of the child's care and custody."

The juvenile court made the following relevant findings:

> The court **FINDS** State's evidence and the testimony of witnesses supporting [S.K.]'s removal and adjudication as credible concerning the incident when she was 13 years old. Although [S.K.]'s initial statements and deposition statements contain certain inconsistencies, the court notes a common thread throughout that cannot be ignored. [S.K.] relates the incident details about location and circumstances surrounding the abuse. She describes how she was held down, when her father placed his penis in her vagina, how the semen felt, and how she was to clean off. A child's recollection of traumatic incidents from several years prior will not contain a photographic recreation of the details. However, the detail and explicit description [S.K.] does provide to the trained hospital-employed [Child Advocacy Center] [(CAC)] investigator, to the [child protective services] [(CPS)] investigator, and in her depositions regarding the sexual acts is significant. *See* [*In re*] *E.H. III*, 578 N.W.2d [243,] 246 [(Iowa 1998)] (probative value of CAC interview substantially outweighs danger of unfair prejudice to father); Iowa Code section 232.96(6). The amount of detail and description provided by [S.K.] support a finding that she was sexually abused at the age of 13. Sexual talk between [S.K.] and a paramour and her friends do not alter the court's findings. The sharing of information and concerns with peers and associates leading up to the report to law enforcement do not negate the significance of the accusation.
>
> The Department of Human Services Child Protection Abuse Assessment Summary concerning [S.K.], dated March 25, 2019, conducted and prepared by a trained DHS protective worker was founded as to the allegation of sexual abuse, sexual abuse third degree, with [the father] as the responsible party. CPS investigative findings and CAC interviews are entitled to substantial weight. Although [S.K.] did not testify, the court has reviewed the written reports from DHS who interviewed her, the written reports from a child protective investigator, the written reports from CAC, and [S.K.]'s depositions. Compare to *In* [*re*] *A.D.L.*, 497 N.W.2d [178,] 179 [(Iowa Ct. App. 1992)]. The CAC and DHS reports are credible and substantiated.

We give deference to the juvenile court's credibility findings. *See In re A.M.*, 84 N.W.2d 100, 110 (Iowa 2014) (noting we give weight to the juvenile court's credibility determinations). The juvenile court found S.K. and those who

interviewed her to be credible even when considering inconsistencies in her recollection of events over time. The core of S.K.'s claims remained the same throughout a Mercy CAC interview, a CPS abuse assessment, and her depositions. S.K consistently said that when she was thirteen years old, the father held her down, had vaginal intercourse with her, "finished" on her stomach, and told her to clean it off with a towel. So like the juvenile court, we find S.K. to be credible. The father points out S.K. lied about sending someone a nude photo. But that is a collateral issue. And we will not assume S.K. lied about the abuse simply because she lied about an unrelated issue.

Because the father only challenged S.K.'s adjudication as CINA on credibility grounds and we find her credible, we find the all grounds authorizing S.K.'s adjudication satisfied.

## IV. Conclusion

The juvenile court did not delegate its power to determine visitation. Permitting DHS to establish the terms of visitation in consultation with the GAL and children's therapists is in N.K.'s best interest. The juvenile court did not abuse its discretion by ordering the father to produce S.K.'s phone or associated expert report. The father waived his challenge to the statutory grounds authorizing adjudication of N.K. We defer to the juvenile court and find S.K. credible and affirm her adjudication as CINA under section 232.2(6)(b), (c)(1), (c)(2), (d), and (*l*).

**AFFIRMED.**